# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

ISIS M. JOHNSON,

        Plaintiff,

v.

COMMISSIONER ROLAND COOK,
ET AL.,

        Defendants.

Civil Action No.
3:19-cv-1464 (CSH)

**JULY 1, 2021**

## INITIAL REVIEW ORDER

    Plaintiff Isis M. Johnson ("Johnson" or "Plaintiff"),[1] a convicted prisoner, has filed a *pro se* civil rights complaint asserting claims under 42 U.S.C. §§ 1983, 1985, 1986 and 1988 against former Commissioner of Correction Roland Cook; Wardens Corecella, William Mulligan and Amonda Hannah; Deputy Wardens Nathan Hein, Denise Walker and Jeanotte; Captains Miranda, Dorosko, Fusaro, Diloretto and Allen; Correctional Officers Somer and Zegrazewski; Maintenance Officer Sendzik; Drs. Matt Moyer and Burns; Nurses Janine Brennan, D. Fritz, Loreen Williams, K. Philips and Spano-Lonis; Regional Director of Mental Health Andrea Reischler ("Mental Health Director Reischler"); Health Services Administrator Ronald Labonte; RCOO Krista Shea; and Certified Correctional Health Professional ("CCHP") Colleen Gallagher (collectively, "Defendants"). Doc. 11 ("Am. Compl.") ¶¶ 5–36.[2] Plaintiff claims that

---

[1] Plaintiff refers to herself as a transgender woman. *See, e.g.*, Am. Compl. ¶¶ 47, 92–93. Her name is listed as Isis M. Johnson, CT DOC Inmate Number 381064, in the Department of Correction's Offender Information Search. *See* Connecticut Department of Correction, Offender Information Search, http://www.ctinmateinfo.state.ct.us/ (last visited July 1, 2021). Accordingly, the Court refers to Inmate Johnson using female pronouns.

[2] On November 26, 2018, a judge sentenced Johnson to forty-two months of imprisonment pursuant to her plea of guilty to one count of a violation of probation. Information regarding Johnson's conviction and sentence is available on the State of Connecticut Judicial Branch website. *See* State of Connecticut Judicial Branch, Criminal/Motor Vehicle Convictions Search, By Docket Number, S01S-CR11-0174284-S, https://www.jud2.ct.gov/crdockets/ (last visited July 1, 2021).

Defendants were deliberately indifferent to her medical and mental health needs in violation of the Eighth Amendment and denied her treatment for those needs in violation of her rights to equal protection and due process under the Fourteenth Amendment.[3] Johnson also asserts claims of negligence, assault, battery and intentional infliction of emotional distress under state law. *Id.* at ¶¶ 84–117. Plaintiff previously was confined at the Connecticut Department of Correction's ("DOC's") Garner Correctional Institution ("Garner"), but she has since been released from state custody to a private residence in Naugatuck, Connecticut. *See* Am. Compl. ¶ 4; Doc. 19 (notifying the Court of change of address).

The Court now reviews Johnson's Amended Complaint to determine whether her claims may proceed under 28 U.S.C. § 1915A.

## I.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)–(2). Although detailed allegations are not required, a complaint must "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This

---

[3] The case at bar is separate from Johnson's other case presently pending before the undersigned, in which Johnson alleged that prison officials discriminated against her on the basis of her transgender identity and prevented her from practicing her religious beliefs. *See Johnson v. Padin*, No. 20 Civ. 637 (CSH), 2020 WL 4818363 (D. Conn. Aug. 16, 2020) (initial review order).

plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking its analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

With respect to *pro se* litigants, it is well-established that their "submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above: a *pro se* plaintiff's complaint still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court may not "invent factual

allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).

## II. <u>BACKGROUND</u>

The following facts are derived from Plaintiff's Amended Complaint, as well as the exhibits attached to Plaintiff's Complaint.

On May 1, 2018, Johnson was admitted to the DOC as a pretrial detainee. Prior to her admission, medical and mental health providers diagnosed Johnson as suffering post-traumatic stress disorder, depression, anxiety, bipolar disorder, suicidal ideation, and gender dysphoria/identity disorder—a condition that involves a conflict between the sex that a person is assigned at birth and the gender with which the person identifies after birth. Am. Compl. ¶¶ 23, 52, 54–55, 69–76; Doc. 1-1 ("Exh. A"), at 4–5; Doc. 1-2 ("Exh. B"), at 9; Doc. 1-3 ("Exh. C"), at 7–9.

Although born as a male, Johnson identifies with the female gender. Am. Compl. ¶ 93. She has been transitioning from the male gender to the female gender for twelve years but has not undergone sex reassignment surgery. Am. Compl. ¶ 93; Exh. C at 7. The transition process has involved hormone replacement therapy and a breast augmentation procedure. Exh. C at 7. In 2018, Johnson's treating physician in Stamford, Connecticut, recommended that she undergo laser hair removal, vocal feminization surgery and facial feminization surgery. *Id*.

Since her admission to DOC in May 2018, Johnson has undergone hormone replacement therapy, has been permitted to shower in an area separate from male inmates and detainees, and has been able to order items from the list of products in the commissary that are available to female inmates and detainees. Exh. B at 9; Exh. C at 8. In July 2018, Dr. Burns, DOC's Chief

Psychologist, evaluated Johnson, re-affirmed her diagnosis of gender dysphoria, and prepared an individualized treatment plan based on Johnson's diagnosis. Exh. C at 8.

On October 17, 2018, at Bridgeport Correctional Center ("Bridgeport"), Maintenance Officer Sendzik subjected Johnson to "[t]rans-phobic slurs, Gender Related Insults and public Humiliation." Am. Compl. ¶ 39. Johnson heard Officer Sendzik tell other inmates "I have someone with big breast[s] downstairs, you guys can have the best of both worlds." *Id.*

Johnson filed a complaint pursuant to the Prison Rape Elimination Act ("PREA") with a lieutenant and met with a mental health social worker regarding Officer Sendzik's harassment. *Id.* ¶ 40. Prison officials then asked Johnson to provide a written statement of her encounters with Officer Sendzik. *Id.* ¶ 41. On October 23, 2018, Johnson submitted a description of the sexual harassment committed by Officer Sendzik, "urgently requesting an investigation." *Id.*

On December 21, 2018, Johnson received a letter from Captain Fusaro of the PREA Investigations Unit. *Id.*; Exh. B at 3. Captain Fusaro indicated that Johnson's claim of sexual harassment had been reported, documented and investigated at Bridgeport. Exh. B at 3. Investigating officials deemed the allegation to be unsubstantiated and closed the matter at the facility level. *Id.* The PREA Investigations Unit also considered the matter to be closed. *Id.*

On November 15, 2018, Johnson filed a grievance regarding the conduct of Officer Sendzik. Exh. B at 2. On January 15, 2019, Warden Hannah denied the grievance because there was "no evidence" to substantiate Johnson's claim. Am. Compl. ¶ 46; Exh. B at 2. On January 31, 2019, Johnson appealed the denial of the grievance. Am. Compl. ¶ 46; Exh. B at 4. On March 27, 2019, a district administrator denied the appeal. *Id.*

On January 6, 2019, Johnson submitted a request to her unit manager at MacDougall-Walker Correctional Institution ("MacDougall-Walker") seeking treatment for her gender dysphoria/identity condition.   Am. Compl. ¶ 52.

On January 9, 2019, Johnson submitted a request to MacDougall-Walker's medical department seeking to speak with someone regarding gender affirming medical treatment for her gender dysphoria/identity condition and to find out what options might be available beyond hormone treatment.   *Id.*; Exh. A at 5.

On January 15, 2019, Johnson submitted a request to Deputy Warden Jeanotte seeking information about any medical treatment plans that had been formulated for her and the names of the staff members who were members of the Gender Non-Conforming Review Committee ("GNCRC"). Am. Compl. ¶ 53; Exh. A at 6.[4]   Deputy Warden Jeanotte indicated that Dr. Burns, Mental Health Director Reischler, Warden Mulligan and Johnson's housing unit manager were members of the GNCRC, and that Johnson should consult with Dr. Burns and Mental Health Director Reischler regarding her treatment plan.   *Id.*

On April 3, 2019, Johnson met with Dr. Moyer to discuss her requests for gender affirming treatment including laser hair removal, vocal feminization surgery and facial feminization surgery. Exh. A at 13–14.   During the appointment, Dr. Moyer indicated that he did not think the three procedures were medically necessary.   *Id.*

On April 16, 2019, Johnson filed a request for Health Services Review because she disagreed with Dr. Moyer's diagnosis and treatment decision.   Am. Compl. ¶ 57; Exh. A at 13–14; Exh. B at 7.   Nurse Brennan received the request on April 18, 2019 and returned the request without disposition as having been untimely filed.   Am. Compl. ¶ 57; Exh. B at 8 ("You

---

[4] The GNCRC is a "a multi-disciplinary group that shall provide recommendations regarding custodial management as it relates to inmates identifying as gender non-conforming and/or who have an intersex condition."   DOC

filed this on 4/16/19. Per AD 8.9, a Health Service Review of diagnosis/treatment must be filed within 10 days of the appointment. You stated the appointment was 4/3/19. That is 13 days."). Johnson was adamant that she had filed the request in a timely manner in accordance with DOC Administrative Directive 8.9, which governs inmate health services remedies and appealed the return of the request without disposition to the next level. Am. Compl. ¶¶ 58, 62–63.

On April 16, 2019, Johnson also filed a Request for Reasonable Accommodation seeking to be treated by a physician who specialized in transgender health care and to be evaluated for gender affirming surgical procedures. *Id.* ¶ 54; Exh. A at 11. Nurse Philips disagreed with the request for accommodation because it sought approval for cosmetic and other procedures that were not medically necessary as defined by DOC Administrative Directive 8.1. Am. Compl. ¶ 54; Exh. A at 11 ("Per Directive 8.1, Health Services excludes: cosmetic surgery, sex change surgery, and elective care, including surgery that isn't medically necessary"). On April 22, 2019, the Americans with Disabilities Act ("ADA") Coordinator denied Johnson's request as not seeking an accommodation and referred the request to Dr. Burns and Mental Health Director Reischler for review. Am. Compl. ¶ 55; Exh. A at 11 ("This is not an ADA accommodation, but your request has been forwarded to the appropriate staff.").

Johnson became very anxious and depressed after learning that Nurse Brennan had returned her request without disposition. *Id.* ¶ 60. As a result, Johnson banged the back of her head on the floor of her cell hard enough to cause a loss of consciousness and bleeding from her scalp. *Id.*

On April 25, 2019, Plaintiff submitted an inmate request form to Nurse Brennan, informing Brennan that she had misinterpreted Administrative Directive 8.9. *Id.* ¶ 65; Exh. A at

---

Administrative Directive 8.17 ¶ 6.

20. Nurse Brennan responded by stating that Plaintiff would be meeting with Mental Health Director Reischler to discuss the issue and that Mental Health Director Reischler, Dr. Burns, and the GNCRC "have the final say" regarding Plaintiff's request. Am. Compl. ¶ 65; Exh. A at 20. Plaintiff sent additional communications to Nurse Brennan on May 2, 2019. Am. Compl. ¶ 65; Exh. A at 21–23.

Also on April 25, 2019, Johnson submitted a request addressed to Nurse Philips seeking to be seen by her caseworker. Am. Compl. ¶ 55; Exh. A at 12. Johnson informed Nurse Philips that she had initially requested to be seen by her caseworker on April 11, 2019 but her caseworker had neglected to call her down for an appointment. *Id.* Johnson indicated that she needed to address her feelings of extreme emotional distress as well as Dr. Moyer's decision to deny her request for gender affirming surgical procedures. *Id.* On April 26, 2019, Johnson met with Mental Health Director Reischler. Exh. A at 21.

On May 16, 2019, in Corrigan Correctional Institution's ("Corrigan's") dining hall, Officers Somer and Zegrazewski made demeaning and derogatory comments about Johnson's gender transition and voiced transgender-phobic slurs about her in front of the other inmates at her dining table. Am. Compl. ¶¶ 48–49. The other inmates began to laugh and threw food at Johnson. *Id.* ¶ 49.

On June 3, 2019, Johnson filed a grievance regarding the conduct of Officers Somer and Zegrazewski. *Id.* ¶ 50; Exh. B at 5–6. Johnson did not receive a response to the grievance. Am. Compl. ¶ 50. Johnson filed another grievance, but prison officials denied it. *Id.*

On May 20, 2019, Health Services Administrator Labonte informed Johnson that the appeals of her request for Health Services Review that Nurse Brennan had returned without

disposition had been received in his office and that he had forwarded the appeal documents to Mental Health Director Reischler for review.   Am. Compl. ¶ 67; Exh. A at 24.

On July 26, 2019, Johnson submitted requests to Mental Health Director Reischler and CCHP Colleen Gallagher seeking answers to her questions about what gender affirming medical treatment options were available to her beyond hormone treatment and whether her Health Services Review request and her appeals of that request had been addressed or decided.   Am. Compl. ¶ 77; Exh. A at 27–28.   On August 6, 2019, CCHP Gallagher sent Johnson a letter indicating that Mental Health Director Reischler was still collecting information from medical providers who had treated Johnson prior to incarceration and would be meeting with Dr. Burns to discuss Johnson's requests for treatment and treatment options when the information became available.   Exh. C at 11.   Mental Health Director Reischler also informed Johnson that the appeals of her April 16, 2019 request for Health Service Review could not be processed and she was returning the appeal documents to Johnson.   *Id.*

On August 6, 2019, Johnson submitted a request to Nurse Williams seeking to schedule an appointment to discuss treatment options for her gender dysphoria condition.   Am. Compl. ¶ 78; Exh. A at 29.   On August 13, 2019, Nurse Williams informed Johnson that she was scheduled to meet with an endocrinologist soon and that she should make a list of questions to ask the endocrinologist about her treatment options.   Am. Compl. ¶ 80; Exh. A at 29.[5]

The initial denial of her request for gender affirming procedures by Dr. Moyer and the delay in the reconsideration of that denial by Mental Health Director Reischler and Dr. Burns caused Johnson to suffer physical and psychological injuries.   Am. Compl. ¶¶ 78–79.   Johnson attempted to harm herself by hitting her head on the wall and floor of her cell.   *Id.*   She also

---

[5] As of August 9, 2019, Johnson had been transferred to Garner.   Doc. 13, at 11.

attempted to cut off the blood flow to her penis and testicles by wrapping shoestrings tightly around them. *Id.* She cries daily and has gone days without food or sleep. *Id.* She has experienced severe stomach problems and has had difficulty concentrating. *Id.*

## III. <u>DISCUSSION</u>

Johnson invokes the Court's jurisdiction under 42 U.S.C §§ 1983, 1985, 1986 and 1988. She asserts Eighth Amendment deliberate indifference to medical and mental health needs claims, a Fourteenth Amendment due process claim, a Fourteenth Amendment equal protection claim, and a claim of a violation of the PREA, 34 U.S.C. §§ 30301-09. Johnson also asserts state law negligence, assault, battery and intentional infliction of emotional distress claims, and she suggests that the Defendants have violated her rights under the Act Concerning the Fair Treatment of Incarcerated Persons, P.A. No. 18-4 (enacted May 14, 2018).

### A.       Sections 1985, 1986 and 1988

Johnson includes no facts in support of her claims under 42 U.S.C. §§ 1985, 1986, and 1988. *See generally* Am. Compl. The first two subsections of 42 U.S.C. § 1985 clearly are not relevant to this action. Section 1985(1) prohibits conspiracies to prevent federal officials from performing their duties, and section 1985(2) prohibits conspiracies intending to deter witnesses from participating in state or federal judicial proceedings. Johnson's claims are not related to the participation of witnesses in judicial proceedings or the performance of duties by federal officials.

In order to state a claim under section 1985(3), a plaintiff must allege that: (1) the defendants were part of a conspiracy; (2) the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) one or more of the defendants engaged in an overt act taken in furtherance of

the conspiracy; and (4) as a result of the conspiracy he or she suffered a physical injury or an injury to his or her property, or a deprivation of a right or privilege. *See Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). Furthermore, a plaintiff must show that the conspiracy was motivated by a "racial, or perhaps otherwise class-based invidiously discriminatory animus." *Id.* at 102. Section 1985(3) may not be construed as a "general federal tort law." *Id.*

Johnson does not allege facts to support the existence of a conspiracy by the Defendants to deprive her of the equal protection of the laws. *See, e.g.*, Gallop *v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators"). Nor does Plaintiff allege that any of Defendants' actions were motivated by racial bias or other class-based animus. *See, e.g.*, *Doe v. Mastoloni*, No. 14 Civ. 718 (CSH), 2016 WL 593439, at *15 (D. Conn. Feb. 12, 2016) (dismissing conspiracy claim and noting that, "a conspiracy claim under § 1985 must be . . . motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus" (citation and internal quotation marks omitted)). Accordingly, Plaintiff has not stated a plausible claim of a violation of section 1985(3), and the section 1985 claim is DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

"Section 1986 provides no substantive rights; it provides a remedy for the violation of section 1985. Thus, a prerequisite for an actionable claim under section 1986 is a viable claim under section 1985." *Young v. McGill*, No. 09 Civ. 1205 (CSH), 2011 WL 6223042, at *5 (D. Conn. Dec. 8, 2011), *modified on recons. on other grounds*, 2012 WL 401022 (D. Conn. Feb. 8, 2012). Because the Court has dismissed Plaintiff's section 1985 claim, Plaintiff's section 1986 claim is not actionable and is also DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

Section 1988(a) provides that the district courts shall exercise their jurisdiction over civil rights cases in conformity with federal law, or where appropriate, state law. This section does not provide for an independent cause of action. *See Moor v. Alameda County,* 411 U.S. 693, 702–06, *reh'g denied,* 412 U.S. 963 (1973); *see also, e.g.*, *Tyson v. Juliet*, No. 20 Civ. 296 (SRU), 2020 WL 3256889, at *5 (D. Conn. June 16, 2020) ("Section 1988(a) does not provide an independent cause of action."). Section 1988(b) permits a district court, "in its discretion, [to] allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" of bringing a lawsuit under Section 1983 or various other civil rights provisions. 42 U.S.C. § 1988(b). A *pro se* litigant, however, is not entitled to attorneys' fees under section 1988. *See Kay v. Ehrler,* 499 U.S. 432, 435 (1991); *see also Tyson*, 2020 WL 3256889, at *5 (dismissing section 1988 claim in an initial review order because "[a]s a *pro se* litigant, [the plaintiff] [was] not entitled to attorneys' fees under section 1988"). Accordingly, any claims asserted under 42 U.S.C. § 1988 are DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

## B.    PREA

Plaintiff claims that Captain Allen (a shift commander at Bridgeport), Captain Fusaro (a PREA investigator), and Deputy Warden Hein (overseeing Bridgeport) failed to properly investigate Plaintiff's sexual harassment complaint against Maintenance Officer in violation of the constitution and the Prison Rape Elimination Act ("PREA"). Am. Compl. ¶¶ 9, 15–17.[6]

"Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials." *Baker v. Weir*, No. 16 Civ. 1066 (JAM), 2016 WL

---

[6] As noted *supra*, in October 2018, Johnson filed a PREA complaint because Maintenance Officer Sendzik subjected her to sexually related insults and slurs. On December 21, 2018, Johnson received a letter from Captain Fusaro of the PREA Investigations Unit. Am. Compl. ¶ 41; Ex. B at 3. Captain Fusaro indicated that Johnson's claim of sexual harassment had been reported, documented and investigated at Bridgeport. *Id.* Investigating officials deemed the allegation to be unsubstantiated and closed the matter at the facility level. *Id.* The PREA Investigations Unit also considered the matter to be closed. *Id.*

7441064, *2 (D. Conn. Dec. 27, 2016) (citing *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986)). However, "[t]he law is well established that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim." *Dorlette v. Butkiewicus*, 11 Civ. 1461 (TLM), 2013 WL 4760943, *22 (D. Conn. Sep. 4, 2013) (internal quotations omitted); *see also Brown v. Rose*, No. 16 Civ. 229 (JCH), 2018 WL 3637474, at *7 (D. Conn. July 31, 2018) (dismissing the plaintiff's constitutional claims regarding a prison official's failure to adequately investigate sexual assault allegations, dissuading the plaintiff from accessing the prison's grievance system, and preventing him from pursuing a PREA complaint because "inmates do not enjoy a constitutionally protected right to have their grievances investigated").

Moreover, the PREA seeks to, *inter alia*, "establish a zero-tolerance standard for the incidence of prison rape in prisons in the United States," "develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape," and "increase the available data and information on the incidence of prison rape." 34 U.S.C. § 30302(1), (3)–(4). However, "[t]he PREA does not create a private right of action for [prisoners]." *Abrams v. Erfe*, No. 17 Civ. 1570 (CSH), 2018 WL 691714, at *16 (D. Conn. Feb. 2, 2018) (citation and internal quotation marks omitted); *Jones v. Forbes*, No. 16 Civ. 14 (VAB), 2016 WL 4435081, at *3 (D. Conn. Aug. 19, 2016) ("There is nothing in the PREA that suggests that Congress intended to create a private right of action for inmates to sue prison officials for non-compliance with the Act."). Consequently, this Court has repeatedly dismissed prisoners' PREA claims on the basis of their allegations that prison officials failed to comply with the PREA. *See, e.g.*, *Brown v. Rose*, No. 16 Civ. 229 (JCH), 2018 WL 3637474, at *7 (D. Conn. July 31, 2018) (dismissing the plaintiff's claim that a prison official preventing him from

pursuing a PREA claim because "the PREA does not create a private right of action for prisoners"); *Abrams*, 2018 WL 691714, at *16 (dismissing plaintiff's claims that prison officials failed to investigate his PREA claims and dismissed them as lacking merit).

Plaintiff does not allege that Defendants interfered with her right to access the courts or DOC's grievance system. She alleges only that Captains Allen, Fusaro, and Deputy Warden Hein failed to properly or thoroughly investigate Johnson's allegations in connection with her PREA complaint against Officer Sendzik. Such allegations do not state a claim of a violation of Johnson's constitutionally or federally protected rights. Accordingly, all claims asserted under the PREA against Defendants Allen, Fusaro, and Hein are DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

## C.     Section 1983

Section 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. § 1983; *Shakhnes v. Berlin*, 689 F.3d 244, 250 (2d Cir. 2012). "Section 1983 does not create substantive rights"—rather, it "provides a means to redress the deprivation of a federal right guaranteed elsewhere." *Diggs v. Town of Manchester*, 303 F. Supp. 2d 163, 182 (D. Conn. 2004). In the case at the bar, Johnson's allegations must be sufficient to state a claim for a constitutional violation in order for her action to proceed pursuant to section 1983.

To the extent Johnson seeks monetary damages against Defendants in their official capacities, her claims are barred by the Eleventh Amendment and will be dismissed. *See, e.g.*, *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) ("[T]he eleventh amendment immunity protects state officials sued for damages in their official capacity.").

However, Johnson may seek to recover monetary damages against Defendants in their *individual* capacities. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of section 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under section 1983 solely by the 'official' nature of their acts.").

Johnson's request for declaratory relief also shall be dismissed. Johnson seeks "a declaration that the acts and omissions described" in her Amended Complaint "violate her rights under the Constitution and the laws of the United States." Am. Compl. ¶ 118. The declaration Johnson seeks evidently relates only to past alleged wrongs, not ongoing or future breaches of her rights, and accordingly is barred by the Eleventh Amendment, to the extent that the declaration sought is against Defendants in their official capacities. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of [*Ex parte* Young, 209 U.S. 123 (1908)] . . . to claims for retrospective relief" (citations omitted)) . Furthermore, to the extent that Johnson may prevail on any of the claims this Court permits to proceed to service, the Court necessarily would determine that the relevant Defendants had violated her constitutional rights. Thus, a separate award of declaratory relief is unnecessary. *See, e.g.*, *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249–50 (S.D.N.Y. 2006) ("Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action. . . . [and] is dismissed." (citation omitted)).

Finally, Johnson's request for injunctive relief against Defendants shall be dismissed. Johnson seeks an injunction, *inter alia*, "ordering the Connecticut Department of Correction Medical Department and the [GNCRC] to cease their violations against Plaintiff, refusing to grant her the medical treatment she . . . needs," and ordering them to "provide either directly or through an agent with access to doctors who specialize in 'transgender health care' (endocrinologist) and mental health providers trained with the knowledge of gender dysphoria . . . ." Am. Compl. ¶¶ 119–120. As noted earlier in this Initial Review Order, Johnson has been released from state custody to a private residence in Naugatuck, Connecticut. As a result, her request for injunctive relief has become moot and cannot be adjudicated by the Court. *See, e.g.*, *Roque v. Armstrong*, 392 F. Supp. 2d 382, 387 (D. Conn. 2005) ("[P]laintiff has notified the court that he has been discharged from prison and now resides in Bridgeport, Connecticut. Thus, any request for injunctive relief concerning the provision of medical care or proper accommodation for his disabilities by the former Commissioner of Correction or the Department of Correction is now moot."); *Hallett v. N.Y. State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 196 (S.D.N.Y. 2000) (HIV-positive amputee's requests for injunctive relief moot where amputee-plaintiff had been released from prison prior to motion to dismiss); *Gadson v. Goord*, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *3 (S.D.N.Y. Nov. 17, 1997) ("Because plaintiff is no longer incarcerated and under the supervision of any of the named defendants, the Court rejects plaintiff's request for injunctive relief 'directing defendants to provide medical care,' 'preventing defendants from mistreating pltf [sic]', and 'directing defendant's [sic] to provide proper living environment for pltf.' . . . Plaintiff's claims for injunctive relief are moot and the Court lacks jurisdiction to consider them." (citations omitted)).

1.      ***Warden Corecella***

Johnson states that Warden Corecella was legally responsible for the operation of Corrigan and the welfare of all inmates at Corrigan. Compl. ¶ 6. She does not otherwise mention or refer to Warden Corecella in the body of the Amended Complaint. Thus, Johnson has not adequately alleged that Corecella violated her federally or constitutionally protected rights, and the claims against Corecella are DISMISSED as lacking an arguable factual or legal basis. *See* 28 U.S.C. § 1915A(b)(1).

### 2. *Sexual Harassment – Eighth Amendment*

Plaintiff claims that Officers Somer and Zegrazewski made demeaning and derogatory comments to Plaintiff while she was in the dining hall at Corrigan, and that this conduct constitutes sexual harassment. Am. Compl. ¶ 49.

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when the official's action involves the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citation and internal quotation marks omitted). To succeed on an Eighth Amendment claim, a plaintiff "must show (1) a deprivation that is objectively, sufficiently serious . . . and (2) a sufficiently culpable state of mind on the part of the defendant official." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (internal quotation marks omitted).

The Second Circuit has held that allegations of physical sexual abuse are cognizable Eighth Amendment claims because "sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). With respect to the objective element, the court of appeals explained that "[t]here can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be objectively, sufficiently serious enough to constitute an Eighth Amendment

violation." *Id.* (citations and internal quotation marks omitted). To meet the subjective element, an inmate must allege facts demonstrating that a prison official possessed a "sufficiently culpable state of mind to violate the prisoner's constitutional rights." *Id.* And, "[w]here no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Id.* (citation omitted).

In analyzing the objective element in *Boddie*, the Second Circuit held that a small number of "isolated episodes of harassment and touching"—where the plaintiff was allegedly "verbally harassed, touched, and pressed against without his consent"—were "despicable and, if true . . . may potentially be the basis of state tort actions," but they did not "involve a harm of federal constitutional proportions." *Id.* In so concluding, the court of appeals emphasized that "[n]o single incident" that the plaintiff described was severe enough to be "objectively, sufficiently serious." *Id.*

In *Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015), the Second Circuit clarified the Eighth Amendment standard that must be applied to inmate claims of sexual abuse by prison officials, and noted that courts must "look beyond historical conceptions to the evolving standards of decency that mark the progress of a maturing society." *Id.* at 259. That is because "particular conduct that might not have risen to the level of an Eighth Amendment violation 18 years ago may no longer accord with community standards," and that "sexual abuse of prisoners, once passively accepted by society, deeply offends today's standards of decency." *Id.* at 254, 259. The court then held that "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth

Amendment." *Id.* Therefore, even "a single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." *Id.* at 257.

While sufficiently severe or serious *physical* sexual abuse thus is clearly actionable, it has often been stated that, generally, "verbal harassment, standing alone, does not amount to a constitutional deprivation." *Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000) ("[R]udeness and name-calling does not rise to the level of a constitutional violation."). That is because being "called . . . names" by a prison guard, in and of itself, does not cause an "appreciable injury." *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986).

However, in *Willey v. Kirkpatrick*, 801 F.3d 51 (2d Cir. 2015), the Second Circuit recognized that the non-physical sexual harassment an inmate had endured caused him to suffer "psychological pain" and to attempt suicide. *See id.* at 70. Acknowledging that the law in this Circuit has developed with the new guidance provided in its *Crawford* decision, the court of appeals thus instructed the district court on remand to determine if the pain resulting from the various forms of harassment that the plaintiff experienced constituted an "appreciable injury" that was actionable. *See id.*

With that guidance in mind, in *Negron v. Matthews*, No. 317 Civ. 1042 (SRU), 2019 WL 1298558 (D. Conn. Mar. 21, 2019), this Court granted a motion to dismiss involving a single incident of verbal harassment, in part because the plaintiff's allegations—that a prison officer used sexually suggestive language but did not physically touch the plaintiff, expose his genitals to the plaintiff, or threaten him sexually—did not state a claim for relief under the Eighth Amendment. *See id.* at *5–6. Critical to the Court's conclusion was the fact that the plaintiff's

complaint contained "no allegations of emotional or psychological harm or pain." *Id.* at *6 (citing *Willey*, 801 F.3d at 70).

In the case at bar, Plaintiff claims that on May 16, 2019, in the Corrigan dining hall, Officers Somer and Zegrazewski made demeaning and derogatory comments about Johnson's gender transition and voiced transgender-phobic slurs about her in front of the other inmates at her dining table. Am. Compl. ¶ 49. The inmates at the table laughed and threw food at Johnson. *Id.* Crucially—and unlike in *Negron*—Plaintiff claims that because of Somer and Zegrazewski's actions, she felt "insecure, scared, traumatized," and she "ha[d] suicidal thoughts." *Id.* at 50. Although Plaintiff does not allege that she was physically abused in any manner, at this early stage of the proceedings, Plaintiff has pleaded that she experienced an "appreciable injury" stemming from Defendants' verbal harassment that rises to a constitutional violation. *Willey*, 801 F.3d at 70. Therefore, Plaintiff's Eighth Amendment sexual harassment claim against Officers Somer and Zegrazewski will be allowed to proceed.

### 3. *Sexual Harassment – Fourteenth Amendment*

Plaintiff claims that Maintenance Officer Sendzik sexually harassed Plaintiff by calling her trans-phobic slurs while she was a pre-trial detainee at Bridgeport. Am. Compl. ¶ 39. Plaintiff also claims that Warden Hannah is responsible for Sendzik's conduct because she was Bridgeport's Warden at the time of the incident and denied Plaintiff's grievance. *Id.* ¶¶ 8, 46.

At the time of the incident involving Officer Sendzik, Johnson was a pretrial detainee. Thus, her claim of sexual abuse against Sendzik is governed by the Due Process Clause of the Fourteenth Amendment, and not by the Eighth Amendment, as "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually

nor otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (internal quotation marks, citations, and alterations omitted).

Generally, protections under the Fourteenth Amendment are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.* (citation and quotation marks omitted). However, in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court held that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one"—that is, a pretrial detainee need not satisfy the subjective prong of the Eighth Amendment inquiry. *Id.* at 397.

Since *Kingsley*, courts in this Circuit have noted that it is not yet clear whether a pretrial detainee bringing a sexual abuse claim under the Fourteenth Amendment—as opposed to an excessive force claim—must satisfy both prongs. *See, e.g.*, *Lewis v. Huebner*, No. 17 Civ. 8101 (KMK), 2020 WL 1244254, at *9 (S.D.N.Y. Mar. 16, 2020) ("[I]t is presently unclear whether both prongs required for Eighth Amendment sexual abuse claims are also required for claims of sexual abuse under the Fourteenth Amendment." (citation and internal quotation marks omitted)); *Gilliam v. Black*, No. 18 Civ. 1740 (SRU), 2019 WL 3716545, at *10 (D. Conn. Aug. 7, 2019) ("[T]he Supreme Court has ruled in *Kingsley* that only an objective standard is appropriate when analyzing claims of excessive force brought by pre-trial detainees, it is unclear to what extent this ruling is applicable to a pretrial detainee's claims of sexual abuse under the Fourteenth Amendment.").

Under either formulation, though, Plaintiff in the case at bar has not stated a claim for relief against Officer Sendzik because her claim does not satisfy the objective prong. To prevail on a Fourteenth Amendment claim for sexual abuse, a pretrial detainee must show the defendant acted in a manner objectively "sufficiently severe or serious" to "constitute conduct that was

sufficiently harmful enough to offend contemporary standards of decency." *Gilliam*, 2019 WL 3716545, at *10.

According to Plaintiff, on October 17, 2018, while she was a pretrial detainee at Bridgeport, Sendzik used "trans-phobic slurs and gender-related insults towards her and caused her public humiliation." Am. Compl. ¶ 39. She also heard Officer Sendzik tell other inmates, "I have someone with big breast[s] downstairs, you guys can have the best of both worlds." *Id.* Johnson asserts no facts suggesting that Sendzik contacted her, however, nor that he otherwise subjected her to physical sexual abuse.

As noted *supra*, "verbal harassment, standing alone, does not amount to a constitutional deprivation." *Cole*, 379 F. App'x at 43; *see also Shtilman v. Makram*, No. 14 Civ. 6589 (NSR), 2018 WL 3745670, at *6 (S.D.N.Y. Aug. 6, 2018) (derogatory comments about inmate's transgender identity and religion made by the defendant alone, "fail to raise a cognizable claim for relief, as they amount to threats and verbal abuse, which are not constitutional violations, though despicable as they may be" (citations omitted)); *Trowell v. Theodarakis*, No. 18 Civ. 446 (MPS), 2018 WL 3233140, at *3 (D. Conn. July 2, 2018) (allegation that correctional officer had called the plaintiff "derogatory names based on [plaintiff's] sexual orientation" did not state claim of sexual abuse under Eighth Amendment); *Keaton v. Ponte*, No. 16 Civ. 3063 (KPF), 2017 WL 3382314, at *10 (S.D.N.Y. Aug. 4, 2017) (dismissing Eighth Amendment claims of sexual abuse against female corrections officers where there was no "illicit physical contact between a corrections officer and an inmate" and the corrections officers' alleged "verbal harassment,"—encouraging the inmate to use the shower, watching him shower, and making sexual gestures with lipsticks and tongues—"without more, [were] not actionable" as cruel and unusual punishment).

Furthermore, Plaintiff does not allege the type of "appreciable injury" similar to her Eighth Amendment claim: she does not allege that she was traumatized or had suicidal thoughts because of Officer Sendzik's egregious and inappropriate conduct. *Willey*, 801 F.3d at 70. In fact, following the incident, Plaintiff in her prison grievance stated that she was "obviously angry," but acknowledged that she "ignored [Officer Sendzik's] behavior and went about [her] day." Exh. A at 2–3.

Accordingly, Johnson's allegations regarding inappropriate and derogatory comments made by Officer Sendzik regarding her gender identity and gender expression—as unprofessional and abhorrent as they may be—do not state a Fourteenth Amendment claim of sexual abuse, and Plaintiff's claim is therefore DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

Regarding Plaintiff's claim against Warden Hannah, as supervisor of Officer Sendzik, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). "Personal involvement," the Second Circuit has said, means either direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). To "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation *directly against the official* without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (emphasis added). Plaintiff also may not hold a defendant liable for a constitutional violation

committed by another defendant solely based on his or her "high position of authority in the prison system." *Wright*, 21 F.3d at 501.

Here, Plaintiff has alleged no facts demonstrating personal participation of Warden Hannah in Officer Sendzik's conduct, even if Officer Sendzik's conduct were plausibly unlawful. Warden Hannah's sole action, as related by Plaintiff, was to deny Plaintiff's grievance against Officer Sendzik after the incident involving Officer Sendzik's transphobic remarks had concluded. Am. Compl. ¶ 46. Plaintiff's allegation, which bespeaks of neither direct nor indirect involvement in Officer Sendzik's course of conduct, is insufficient to support a purported violation of Plaintiff's Fourteenth Amendment rights. Accordingly, Plaintiff's claim against Warden Hannah also is DISMISSED.

### 4. *Deliberate Indifference to Medical Needs – Eighth Amendment*

The allegations pertaining to Johnson's requests for medical and mental health treatment arose after she had been convicted and sentenced on November 26, 2018. Thus, the Eighth rather than the Fourteenth Amendment governs her claims that the defendants denied or delayed the provision of treatment for her mental health and/or medical conditions.

The Eighth Amendment prohibits "deliberate indifference" to an inmate's "serious medical needs" as well as an inmate's "need[] for mental health care." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). "There are both objective and subjective requirements to succeed on an Eighth Amendment claim regarding serious mental health needs. First, the danger posed by the deliberate indifference must be "sufficiently serious" from an *objective* perspective; and second, the defendant must have acted with deliberate indifference to that need (*i.e.*, *subjectively* failed to

address the danger). *Young v. Choinski*, 15 F. Supp. 3d 194, 198 (D. Conn. 2014) (collecting cases).

The Court will first address whether Plaintiff's mental health condition satisfies the objective prong of the deliberate indifference standard, and then determine whether the individual Defendants' actions satisfied the subjective prong.

### a.  <u>Objective Element</u>

The objective element of a deliberate indifference claim requires an inmate to assert facts to demonstrate that his or her medical or mental health need is "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir.2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  It contemplates "a condition of urgency" such as "one that may produce death, degeneration, or extreme pain." *Hill v. Curcione*, 657 F.3d 116, 122–23 (2d Cir. 2011) (internal quotation marks and citation omitted).  In determining whether a medical or mental health condition is serious, the Court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

"In the context of mental health needs, propensities to attempt suicide, harm oneself, and/or exhibit severe depression or anxiety attacks have been viewed as sufficiently serious." *Young*, 15 F. Supp. 3d at 199 (collecting cases; internal quotation marks omitted).  Additionally, the Second Circuit has recognized that gender dysphoria may constitute a serious mental health or medical condition for purposes of a deliberate indifference claim. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) ("While the Second Circuit has not addressed the topic directly, we have approved of the description of transsexualism as 'a profound psychiatric disorder,' and

treated it in another context as a 'medical condition.'" (citing *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999)); *see also Manning v. Goord*, No. 05 Civ. 850, 2010 WL 883696, at *7 (W.D.N.Y. Mar. 8, 2010) ("[C]onsistent with *Cuoco* . . . Plaintiffs' GID constitutes a serious medical condition sufficient to avoid dismissal of the Amended Complaint for failure to state a claim."); *Brown v. Coombe*, No. 96 Civ. 476 (RSP) (RWS), 1996 WL 507118, at *3 (N.D.N.Y. Sept. 5, 1996) ("In a particular prisoner, gender dysphoria may be a serious medical need." (collecting cases)).

Turning to the case at bar, Johnson alleges that she suffered from post-traumatic stress disorder, depression, anxiety, bipolar disorder, and gender dysphoria when she was admitted to DOC in May 2018. Her gender dysphoria, in particular, has caused her to experience suicidal thoughts and to harm herself. Johnson has alleged that prior to and during her incarceration, medical and mental health providers, including Dr. Burns, diagnosed her with gender dysphoria/identity disorder and have treated her for the condition with hormone replacement therapy. In addition, she has received mental health services related to this diagnosis and the symptoms caused by the condition, such as depression and suicidal ideation. In April 2019, when Dr. Moyer denied Johnson's requests to undergo gender-affirming surgical procedures, she experienced extreme anxiety and depression and attempted to harm herself by banging her head on the floor and walls of her cell. She also attempted to injure herself by wrapping shoelaces tightly around her testicles and penis.

The Court concludes that Johnson's allegations plausibly show that, as of her re-admittance to DOC in May 2018, she suffered from a serious medical or mental health condition—*i.e.*, gender dysphoria/identity disorder—and that the condition and the symptoms

stemming from the condition require treatment. Accordingly, Johnson has met the objective component of the Eighth Amendment standard.

### b.    Subjective Element: Shea, Jeanotte, and Spano-Lonis

The second element of a deliberate indifference claim is subjective. To meet this element, the inmate must allege that a prison official or medical provider was actually aware that his or her actions or inactions would cause a substantial risk of serious harm. *See Hill*, 657 F.3d at 122 (citation omitted). Mere negligent conduct does not suffice. *See id.* at 123 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." (citing *Estelle*, 429 U.S. at 106)). Nor does a difference of opinion between a medical or mental health provider and an inmate regarding a diagnosis or appropriate medical treatment. *See Chance*, 143 F.3d at 703.

Plaintiff claims that Defendant Shea, the RCOO at McDougall-Walker, Defendant Jeanotte, Deputy Warden of Treatment, and Nurse Spano-Lonis were deliberately different to Plaintiff's medical needs because in one way or another they "blocked" or "refused to get involved" with Plaintiff's requests for treatment. Am. Compl. ¶¶ 21, 28.

However, the documents that Plaintiff has submitted in connection with her Complaint tell a different story. Rather than blocking Plaintiff's efforts to obtain treatment, Defendants Shea, Jeanotte, and Spano-Lonis merely referred Plaintiff to DOC officials who were more appropriate points of contact within DOC to discuss Plaintiff's treatment. For example, during January 2019, Johnson submitted inmate requests to Spano-Lewis, Shea, and Jeanotte seeking the names of members of the GNCRC and information about what gender-affirming treatment—other than hormone treatment—might be available to her. *See* Exh. A at 4–6. In

response to Johnson's request, Nurse Spano-Lewis recommended that Johnson contact her mental health provider regarding the availability of other forms of treatment for her gender dysphoria condition because they were "the more appropriate providers." *Id.* at 4. RCOO Shea indicated that she had referred Johnson's requests regarding additional treatment options to Mental Health Director Reischler because she was "more familiar with Gender Identity Disorder and the options available to patients." *Id.* at 7. Deputy Warden Jeanotte informed Johnson that Dr. Burns, Mental Health Director Reischler, Warden Mulligan and her housing unit manager were members of the GNCRC and suggested that Johnson submit her requests for treatment for her gender dysphoria condition to Dr. Burns or Mental Health Director Reischler. *Id.* at 6.

These are the only allegations against Spano-Lonis, Shea, and Jeanotte. It is apparent that none of these Defendants ignored Johnson's requests for medical treatment, mental health treatment, or information, and that they either forwarded the requests to the appropriate mental health provider or informed Johnson who might best address her requests. The Court concludes that Johnson has not plausibly alleged that Spano-Lonis, Shea, or Jeanotte was deliberately indifferent to a serious risk of harm to her health. Accordingly, the Eighth Amendment claims against these Defendants are DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

### c.  <u>Subjective Element: Mulligan, Walker, Miranda, Dorosko, and Diloretto</u>

Plaintiff brings claims against Warden Mulligan (of MacDougall-Walker), Deputy Warden Walker (of Bridgeport), Captain Miranda (as a unit manager at Bridgeport), Captain Dorosko (as a unit manager at MacDougall-Walker), and Captain Diloretto (as an administrative supervisor) because they were all members or associated with the GNCRC, which according to Plaintiff denied her medical or mental health treatment that she required for her gender dysphoria condition. Am. Compl. ¶¶ 7, 10–14, 19–20. The Court will address each of these Defendants.

Plaintiff's only allegations regarding Warden Mulligan is that he was "responsible for the operation at Macdougall-Walker" and for "the welfare of all of the inmates," and that he is "associated with the GNC committee." *Id.* ¶ 7. Plaintiff does not allege that Mulligan was aware of Plaintiff's requests for treatment, let alone that he was involved in any denial of treatment. In and of itself, Mulligan's membership on the GNCRC is not sufficient to state a claim that he acted with deliberate indifference. Accordingly, Plaintiff's claim against Mulligan is DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

Plaintiff's claim regarding Captain Miranda is similarly deficient. Plaintiff only states that Miranda was aware of the "illegal actions of others" on the GNCRC, and "encouraged the continuation of this violation." Am. Compl. ¶ 13. However, Plaintiff does not allege how Miranda encouraged such constitutional violations, if at all. Although Plaintiff is a *pro se* litigant—and the Court must construe her allegations liberally—her Amended Complaint must still "state a claim to relief that is plausible on its face," and Plaintiff's conclusory allegations are insufficient. *Mancuso*, 379 F. App'x at 61. Plaintiff's deliberate indifference claim against Miranda is also DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

On the other hand, Plaintiff has stated a claim against Deputy Warden Walker, Captain Diloretto, and Captain Dorosko. Plaintiff claims that Walker, a member of the GNCRC, "refused to provide the Plaintiff with resources regarding her G.I.D. even though [she] was fully aware of Plaintiff's medical diagnosis of gender dysphoria." Am. Compl. ¶ 10–11. Plaintiff also claims that Captain Diloretto had many interactions with Plaintiff; was well aware of Plaintiff's medical neglect; took Plaintiff's verbal and written statements regarding her condition; and promised Plaintiff that she would receive medical care—but ultimately broke that promise and denied her requests for relief. *Id.* ¶¶ 19–20. Finally, with respect to Captain

Dorosko, Plaintiff claims that Dorosko had "full knowledge" of Plaintiff's medical condition and that he, along with the GNCRC, "flat-out rejected" any medical treatment and committed an "illegal action." *Id.* ¶ 14. Although Plaintiff's allegations regarding Dorosko are less detailed than her allegations regarding Walker and Diloretto, the Court believes that Plaintiff's assertions are sufficient at this early stage of the litigation, particularly because the Court must construe reasonable inferences in Plaintiff's favor.

Accordingly, the Court finds that, for the purposes of this Initial Review Order, Plaintiff has satisfied the subjective prong of the deliberate indifference standard with respect to Walker, Diloretto, and Dorosko—that they were actually aware that their actions or inactions would cause a substantial risk of serious harm—and therefore permits Plaintiff's Eighth Amendment claims against them to proceed.

### d. Subjective Element: Health Services Administrator Labonte

On April 30, 2019, and May 1, 2019, Johnson filed appeals of the return of her April 16, 2019 request for Health Services Review without disposition by Nurse Brennan. *See* Exh. A at 24. On May 20, 2019, Health Services Administrator Labonte informed Johnson that her appeals had been received and had been forwarded to Mental Health Director Reischler for review and disposition. *See id.* Labonte explained that Mental Health Director Reischler "in collaboration with the team, will respond to you." *Id.* There are no further allegations regarding any conduct or interaction between Plaintiff and Labonte.

The allegations pertaining to Labonte's receipt of Plaintiff's appeals and forwarding them to another DOC official for review and disposition do not state a claim of deliberate indifference to Johnson's serious mental health condition. Further, Plaintiff even admits that Labonte "*attempt[ed] to address*" many of Plaintiff's grievances"—even though he ultimately failed,

according to Plaintiff—which nonetheless tends to indicate that Labonte sought to remedy Plaintiff's complaints, rather than exhibiting deliberate indifference toward them. Am. Compl. ¶ 67. Accordingly, the Eighth Amendment claim asserted against Labonte is DISMISSED. See 28 U.S.C. § 1915A(b)(1).

### e.    Subjective Element: Fritz, Philips, and Williams

The Court next turns to Plaintiff's claim against Nurse Fritz. This Defendant is only mentioned: (1) in the caption of the Amended Complaint; and (2) in the section of the Amended Complaint listing the Parties, but Plaintiff omitted any description regarding Fritz. Additionally, Johnson fails to include any facts that might indicate the name of the facility where Fritz is employed or whether she had any contact with Johnson. Absent any allegations regarding the conduct of Nurse Fritz, Johnson has not alleged that Fritz violated Plaintiff's rights. Accordingly, any claim against Nurse Fritz are DISMISSED as lacking a factual or legal basis. *See* 28 U.S.C. § 1915A(b)(1).

Turning to Plaintiff's claim against Nurse Philips, on April 16, 2019, after receiving confirmation that Dr. Moyer had denied Plaintiff's requests for laser hair removal, vocal feminization surgery, and facial feminization surgery as medically unnecessary, Plaintiff filed a Reasonable Accommodation request seeking to be evaluated by a medical provider who specialized in transgender care and to be reconsidered for all three medical procedures. Exh. A at 11. After reviewing the request for accommodation, Nurse Philips noted that she disagreed with the relief sought on the ground that Department of Correction Administrative Directive 8.1, excludes cosmetic surgery, sex change surgery and elective care. *Id.* On April 22, 2019, the ADA Coordinator further reviewed and denied the request for reasonable accommodation on the ground that it sought relief in the form of medical treatment, and he did not consider it to be a

request for an ADA-related accommodation. *Id.* The Coordinator informed Johnson that he had forwarded the request to Mental Health Director Reischler or Dr. Burns for consideration. *Id.*

Although Philips disagreed with Johnson's ADA accommodation request pertaining to medical procedures, it was the ADA Coordinator who made the final determination to deny Johnson's request and made the decision to refer the request to Reischler or Burns for consideration. Johnson does not allege that she pursued the request for accommodation any further. The conduct of Nurse Philips in reviewing and making a recommendation regarding Johnson's request for accommodation does not state a claim that Nurse Philips disregarded a serious risk of harm to Johnson's medical or mental health. Accordingly, Johnson has not stated a plausible claim that Nurse Philips was deliberately indifferent to her serious mental health or medical need. The Eighth Amendment claim asserted against Nurse Philips is DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

Lastly, the Court turns to Plaintiff's claim against Loreen Williams, who was an Advanced Practice Registered Nurse at MacDougall-Walker. On August 6, 2019, Johnson requested an appointment to discuss available treatment options for her gender dysphoria condition. Exh. A at 29. As of August 9, 2019, Johnson had been transferred to Garner. In a response dated August 13, 2019, Williams informed Johnson that she was scheduled to see an endocrinologist "fairly soon" and suggested that she ask the endocrinologist any questions that she might have about the availability of surgical or other procedures to treat her gender dysphoria condition, the timeline of such procedures, and any other questions about "next steps." *Id.*

Plaintiff asserts that Williams responded Plaintiff's request "by feeding the Plaintiff a series of lies and misdirections which only fueled the psychological harm to Plaintiff." Am. Compl. ¶ 78. Construing Plaintiff's allegations liberally, the Court assumes that Plaintiff is alleging that Williams was deliberately indifferent to Plaintiff's medical needs because Williams did not schedule an appointment with Plaintiff after she requested a meeting.

Given that prison officials transferred Johnson within three days of the date that Johnson submitted the request to Williams seeking an appointment and that the request did not include any facts to suggest that Johnson needed to be seen immediately or that Johnson was experiencing acute mental health symptoms, the fact that Williams neglected to schedule an appointment with Johnson prior to her transfer does not rise to the level of deliberate indifference to a serious risk of harm. Furthermore, Williams did not ignore Plaintiff's request, but instead informed Plaintiff that she was scheduled to be assessed by an endocrinologist in the near future—a response that does not evince a conscious disregard to a serious risk of harm to Johnson's health. Accordingly, Johnson has not asserted facts to state a plausible claim that APRN Williams was deliberately indifferent to her medical or mental health needs. The Eighth Amendment claim asserted against Williams is DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

### f. Subjective Element: Moyer, Burns, Reischler

Plaintiff claims that Dr. Moyer was deliberately indifferent to her medical needs because on April 3, 2019, he denied Plaintiff's request to continue procedures that her treating physician had recommended prior to Plaintiff's admission to DOC because they were not "medically necessary"—that is, laser hair removal, facial feminization surgery, and vocal feminization. Exh. A at 13.

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is *adequate*, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703 (emphasis added). Thus, the "essential test is one of medical necessity and not one simply of desirability." *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (internal quotation marks omitted).

The Court's analysis in *Christensen v. Gadanski*, No. 19 civ. 1927 (KAD), 2020 WL 509693 (D. Conn. Jan. 31, 2020), an analogous case involving a prisoner's knee injury, is instructive. In *Christensen*, the Court concluded for purposes of an initial review order that the plaintiff stated a claim for deliberate indifference to medical needs against his medical providers. *See id.* at *3. Although recognizing that a plaintiff's mere disagreement with a doctor's determination is insufficient to state a section 1983 claim, the Court nonetheless concluded that the plaintiff's claim could proceed because he had alleged that he was receiving little or no treatment:

> Plaintiff has alleged facts suggesting he has a serious medical condition with respect to his knee and that his knee is deteriorating to the point that it will require replacement surgery. Plaintiff has also alleged that he is effectively receiving no treatment beyond the administration of ibuprofen. He alleges that he has received no rehabilitative therapy and to make matters worse, was given a top bunk which has resulted in further injury. While Plaintiff's complaint might be construed as expressing a mere difference of opinion regarding treatment, which would not ordinarily give rise to an Eighth Amendment claim, at this juncture, the claim will proceed to the discovery phase.

*Id.* (citation omitted).

The case at bar is similar. Construing the Amended Complaint liberally, it appears that Plaintiff is alleging more than a mere disagreement with Dr. Moyer's treatment determination;

she appears to be claiming the treatment is *inadequate* to treat her diagnosis of gender dysphoria because Dr. Moyer has denied "medically necessary" surgeries. Am. Compl. ¶ 66. Plaintiff also claims that her treatment "is a clear deviation from standard medical care." *Id.* The Court will permit Plaintiff's deliberate indifference claim against Dr. Moyer to proceed at this early stage of the litigation.

Plaintiff makes similar allegations regarding Dr. Burns and Mental Health Director Reischler: that they are deliberately indifferent to Plaintiff's medical needs because they were aware of Plaintiff's diagnosis and provided inadequate treatment to Plaintiff. Am. Compl. ¶¶ 23–24. In particular, Plaintiff claims that Burns originally diagnosed Plaintiff with gender dysphoria when she first entered DOC's custody, *id.* ¶ 23, and that he met with Reischler on April 26, 2019, to discuss her concerns regarding Dr. Moyer's denial of her treatment requests, Exh. A. at 21. Plaintiff also claims that Reischler and Burns had the authority to review Moyer's treatment decision and order treatment, but declined to do so: Reischler and Burns had the "final say" regarding Plaintiff's request to undergo surgery, according to one DOC official's notation in Plaintiff's medical records. Exh. A at 20.

To be sure, Plaintiff's allegations regarding Dr. Burns are less detailed than her allegations and evidence regarding Mental Health Director Reischler, and both claims are less detailed than Plaintiff's claim against Dr. Moyer. However, at this early stage of the litigation, the Court will also permit Plaintiff's claims of deliberate indifference to proceed against Burns and Reischler.

g.  **Subjective Element: Commissioner Cook**

Plaintiff claims that Commissioner Cook, who is a supervisory official, was responsible for the overall operation of DOC and the facilities in which Plaintiff has been confined, and that he is associated with the GNCRC. Am. Compl. ¶ 5.

The Second Circuit has joined other courts of appeal in holding that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). In the context of an Eighth Amendment deliberate indifference claim, this means that "the plaintiff must plead . . . that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Id.* at 616.

Plaintiff has failed to state a plausible claim with respect to Commissioner Cook because she fails to include any allegations that Cook was actually aware that his actions or inactions would cause a substantial risk of serious harm to Plaintiff. Plaintiff does not allege that Cook undertook any direct, personal involvement in any constitutional violation. [7] Plaintiff furthermore does not allege any indirect, personal involvement by Cook in the health services provided to her. All Plaintiff alleges is that Deputy Warden Walker communicated with Commissioner Cook regarding Plaintiff's diagnosis. Am. Compl. ¶ 10.[8] This bare allegation is insufficient to carry a claim of deliberate indifference against Cook "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S at 570; internal quotation marks omitted).

---

[7] To be sure, DOC Administrative Directive 8.17 requires the Commissioner's review and approval of every Gender Non-Conforming Management Plan that is formulated for an inmate or detainee who identifies as gender non-conforming. DOC Administrative Directive 8.17 ¶¶ 6, 8. Plaintiff however does not make any allegations regarding Cook's direct involvement or approval of her management plan.

[8] Similarly, Plaintiff's exhibits include a letter that she sent to Cook and others in March 2019, in which she described her diagnosis and her treatment history and requested to undergo additional surgeries. Exh. C at 7–9.

Accordingly, Johnson has not asserted facts to state a plausible claim that Commissionor Cook was deliberately indifferent to her medical or mental health needs. The Eighth Amendment claim asserted against Cook is DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

### 5.     *Equal Protection – Fourteenth Amendment*

Johnson contends that she deserves equal treatment with respect to medical needs under the Fourteenth Amendment's Equal Protection Clause, which declares that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1; Am. Compl. ¶ 98. The clause does not mandate identical treatment for each individual or group of individuals; instead, it requires that *similarly situated* persons be treated the same. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985).

A plaintiff may state a claim of intentional discrimination by identifying: (1) "a law or policy that expressly classifies persons on the basis of race[;]" (2) "a facially neutral law or policy that has been applied in an intentionally discriminatory manner[;]" or (3) "a facially neutral statute or policy [that] has an adverse effect and . . . was motivated by discriminatory animus." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) (citation omitted), *overruled in part on other grounds*, *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002). A plaintiff need not plead that a "similarly situated group of individuals" were treated more favorably to "establish a claim of denial of equal protection" under these three theories. *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001). Although comparators are not required, a plaintiff must still allege facts supporting a plausible inference that "discriminatory intent was a motivating factor" in order to state an equal protection claim. *Okin v. Village of*

---

But Plaintiff's Amended Complaint does not attempt to explain how this letter would imply that Cook "personally knew of and disregarded an excessive risk to" Plaintiff's health. *Cf. Tangreti*, 983 F.3d at 619.

*Cornwall–on–Hudson Police Dep't*, 577 F.3d 415, 438 (2d Cir. 2009) (citing *Village of Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977)).

A plaintiff also may plead an equal protection violation under a selective enforcement or treatment theory. To state such a claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citation and internal quotation marks omitted). Absent allegations to support "class-based" discrimination, an individual may state an equal protection claim by alleging that he or she has been intentionally and "irrationally singled out" as a "class of one." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). A plausible class of one claim requires the plaintiff to demonstrate an "extremely high degree of similarity" with the person to whom he or she is comparing himself or herself. *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (citation and internal quotation marks omitted).

Turning to the case at bar, Johnson has not alleged that Defendants denied her requests to undergo various surgeries because she is a transgender woman. Rather, she states that Dr. Moyer denied the requests because the procedures were not considered medically necessary. Nor has Johnson asserted facts to suggest that Defendants treated her differently than similarly situated inmates seeking authorization to undergo medical procedures. *See, e.g.*, *Parker v. Corrigan-Radgowski DOC Staff*, No. 19 Civ. 939 (SRU), 2019 WL 3766476, at *4 (D. Conn. Aug. 9, 2019) (dismissing equal protection claim because the inmate "ha[d] not alleged facts showing that she was treated differently than any other inmate"); *Shtilman*, 2018 WL 3745670,

at *8) (dismissing equal protection claim because transgender prison inmate was not a member of a protected class, failed to assert facts demonstrating that the defendant denied her medical treatment because of her gender identity, and identified no comparators or other inmates similarly situated to her that were not denied medical treatment); *Vaher v. Town of Orangetown,* 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (dismissing equal protection claim where the amended complaint was "completely devoid of any reference to 'similarly situated' or 'substantially similar' individuals").

A discrimination claim must be based on more than conclusory statements that Defendants discriminated against Plaintiff. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Because Plaintiff has not stated a plausible claim that Defendants intentionally discriminated against her or treated her differently than other similarly situated inmates because of her gender identity or transgender status, her equal protection claim is DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

### 6. *Due Process – Fourteenth Amendment*

Johnson claims that Medical Grievance Coordinator Brennan sabotaged her quest for medical treatment in violation of her right to due process by improperly returning her April 16, 2019 request for Health Services Review without disposition because it had been filed in an untimely manner. Am. Compl. ¶ 26. Johnson filed two appeals challenging Brennan's refusal to consider her request for Health Services Review. In August 2019, CCHP Gallagher informed Johnson that she could not appeal Nurse Brennan's decision and returned the appeals forms to her. *Id.* ¶ 101. Johnson contends that in processing or disposing of his requests for Health Services Review and the appeals of those requests, Brennan and Gallagher failed to comply with

or adhere to Administrative Directive 8.9 which governs inmate health services remedies. *Id.* ¶¶ 26, 101. Johnson states that her "asserted . . . Fourteenth Amendment violation of due process further incapsulates the degree of mali[ce] towards [her] in her search for justice and equality." *Id.* ¶ 103.

As for Johnson's dissatisfaction with the responses to her filed medical grievances and appeals of those grievances, "[p]risoners have no constitutionally protected right to have prison officials comply with grievance procedures or even to respond to grievances." *Green v. Martin*, 224 F. Supp. 3d 154, 169–70 (D. Conn. 2016) (citation omitted); *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445–46 (W.D.N.Y. 2008) ("It is well established . . . that inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievance does not in itself give rise to a constitutional claim."); *see also Fernandez v. Armstrong*, No. 02 Civ. 2252, 2005 WL 733664, at *9 (D. Conn. Mar. 30, 2005) ("This district has previously held that failure of a correctional official to comply with the institutional grievance procedures is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right."). Accordingly, Plaintiff's claims that Brennan and Gallagher failed to properly process Johnson's appeals in violation of the Due Process Clause are DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

If Johnson is alleging a substantive due process violation against the Defendants for the denial of medical or mental health treatment, such a claim is duplicative of her Eighth Amendment deliberate indifference to medical and mental health needs claims. *See Roman v. Velleca*, No. 11–1867, 2012 WL 4445475, at *10 (D. Conn. Sept. 25, 2012) ("[S]ubstantive due process claims must be dismissed where they are merely duplicative of claims explicitly

protected under other constitutional sources." (citing *Kia P. v. McIntyre*, 235 F.3d 749, 758 (2d Cir. 2000)). Accordingly, this due process claim is also DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

**D.       State Law Claims**

Johnson has asserted claims of assault and battery against Officers Somer and Zegrazewski, and she has generally asserted claims of negligence and intentional infliction of emotional distress against all Defendants.

**1.       *Assault and Battery***

According to Plaintiff, on May 16, 2019, inmates threw food at her in Corrigan's dining hall after hearing Officers Zagrazewski and Somer insult her and refer to her in a derogatory manner. Am. Compl. ¶ 49. Johnson contends that the other inmates' conduct constituted assault and battery. She seeks to hold the officers responsible for the actions of the inmates. *Id.* ¶¶ 104–05.

In Connecticut, there are two elements of the tort of assault: (1) the defendant must have "intend[ed] to cause a harmful or offensive contact . . . or an imminent apprehension of such contact," with another person; and (2) the other person was actually "put in imminent apprehension" as a result of the contact. *Simms v. Chaisson*, 277 Conn. 319, 331 (2006) (internal quotation marks and citation omitted). The tort of battery also requires two elements: (1) the defendant must have "intend[ed] to cause a harmful or offensive contact . . . or an imminent apprehension of such contact," with another person; and (2) "a harmful contact with the" other person results either "directly or indirectly." *Id.* at 331 (internal quotation marks and citation omitted).

Johnson has not alleged facts from which it can be inferred that either Officer Zagrazewski or Officer Somer intended to cause her imminent apprehension of harmful or offensive contact, or that either officer came into physical contact with her. Nor are there facts to suggest that they directed or encouraged the inmates at the dining table to throw food at Johnson or that she suffered actual physical harm from being hit by the items of food. The claims of assault and battery asserted against Officer Zagrazewski and Officer Somers are therefore DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

**2.** *Intentional Infliction of Emotional Distress*

Plaintiff also brings a claim for intentional infliction of emotional distress. However, it is not clear from the Amended Complaint against whom this claim is brought because this section of the Amended Complaint is comprised of mostly conclusory and general language discussing the elements of the claim. Am. Compl.¶¶ 107–12.

In order to assert a claim for intentional infliction of emotional distress, a plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington,* 254 Conn. 205, 210 (2000) (internal quotation marks and citation omitted). To be held liable for intentional infliction of emotional distress, one's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 210–11 (internal quotation marks and citation omitted).

In support of her claim that Defendants intentionally subjected her to emotional distress, Johnson asserts that she suffered shock, humiliation, severe depression, suicidal thoughts and actions, and post-traumatic stress disorder as a result of the severely traumatic events in her life. Am. Compl. ¶ 109. She states that her medical records reflect the delicate psychological frame of mind that she is always in. *Id.* She contends that Defendants have taken advantage of her. *Id.* ¶ 110.

Even if the Court were to liberally construe Johnson's allegations, those allegations do not plausibly suggest that the Defendants' intended their conduct to inflict severe emotional distress upon Johnson, or that they knew or should have known that such distress likely would ensue. Moreover, the Court does not find that the Defendants' actions were "extreme and outrageous," as those terms are interpreted at common law. The standard in Connecticut to demonstrate extreme and outrageous conduct is "stringent." *Huff v. W. Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998). "[E]xtreme and outrageous" conduct is defined as that which "exceed[s] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. New Haven*, 220 Conn. 225, 267, 597 A.2d 807, 828 (1991). None of the allegations that are found in Plaintiff's Amended Complaint rise to this "extreme and outrageous" level.

Accordingly, the Court concludes that Johnson has not stated a plausible claim of intentional infliction of emotional distress against any Defendant. The claim of intentional infliction of emotional distress is DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

### 3. *Negligence*

Johnson does not articulate the basis for her negligence claim. Instead, she generally asserts that "relevant to the all documented evidence that as defined in the State of Connecticut,

the tortious charge of . . . negligence be asserted as the defining characteristic Injuries suffered by the plaintiff over the past couple of years, further substantiating her claim before the Court." Am. Compl. ¶ 102.

In Connecticut, "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4-165(a). The Connecticut Supreme Court has explained that section 4-165 means that "state employees may not be held personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 318–19 (2003). State employees may be held personally liable acts in the scope of her employment when the employee's actions are "wanton, reckless, or malicious"—which goes beyond negligence and denotes "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Martin v. Brady*, 261 Conn. 372, 379 (2002) (internal quotation marks and citation omitted).

This claim is brought against Defendants, who are state prison employees or officials, for their allegedly negligent actions and/or inactions taken within the scope of their employment. Accordingly, the negligence claim asserted against Defendants in their individual capacities is barred by Conn. Gen. Stat. § 4-165(a) and is DISMISSED. *See* 28 U.S.C. § 1915A(b)(1); *see also Adorno v. Semple*, No. 16 Civ. 325 (MPS), 2016 WL 7469709, at *3 (D. Conn. Dec. 28, 2016) (dismissing negligence claims because "[n]egligence is not cognizable under section 1983" and because "any state law negligence claim would be barred by state statute" (citing *Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986) and Connecticut General Statutes § 4-165)).

### 4. *Act Concerning the Fair Treatment of Incarcerated Persons*

In a section of the amended complaint titled Remedies-Punitive or Exemplary Damages, Johnson mentions Public Act No. 18-4, An Act Concerning The Fair Treatment of Incarcerated Persons. Am. Compl. ¶ 116. She contends that DOC staff members violated the Act by not addressing her in a manner consistent with her gender identity. She does not otherwise refer to this Act or identify staff members or defendants who have not addressed her in an appropriate manner. Thus, she has not alleged that any defendant has violated her rights under the Act. The claim asserted under Public Act No. 18-4 is DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

## IV.   CONCLUSION AND ORDERS

Pursuant to 28 U.S.C. § 1915A, the Court has reviewed Johnson's Amended Complaint to determine which, if any, claims must be dismissed for failure to state claims upon which relief may be granted, or for attempting to obtain monetary relief against defendants who are immune from such relief. Based on the foregoing analysis, the Court sets forth its conclusion and orders:

1) The following claims are DIMISSED: Plaintiff's claims for declaratory relief; Plaintiff's claims for injunctive relief; Plaintiff's claims for damages against Defendants in their official capacities; Plaintiff's claims pursuant to 42 U.S.C. §§ 1985, 1986, and 1988; Plaintiff's PREA claim; all claims against Warden Corcella brought pursuant to 42 U.S.C. § 1983; Plaintiff's Fourteenth Amendment sexual harassment claims against Maintenance Officer Sendzik and Warden Hannah; Plaintiff's Eighth Amendment deliberate indifference claims against RCCO Shea, Deputy Warden Jeanotte, APRN Spano-Lonis, Warden Mulligan, Captain Miranda, Health Services Administrator Labonte, Nurse Fritz, Nurse Philips, APRN Williams, and Commissioner Cook; Plaintiff's Fourteenth Amendment equal protection claim; Plaintiff's Fourteenth Amendment due process claims; and Plaintiff's state law claims

of assault, battery, intentional infliction of emotional distress, negligence, and violation of Public Act No. 18-4.

2) The following claims against the individuals identified below are allowed to proceed to service: Plaintiff's Eighth Amendment sexual harassment claims against Correctional Officer Somer and Correctional Officer Zegrazewski; and Plaintiff's Eighth Amendment deliberate indifference claims against Deputy Warden Walker, Captain Diloretto, Captain Dorosko, Dr. Moyer, Dr. Burns, and Mental Health Director Reischler.

3) The Clerk shall verify the current work addresses for Correctional Officer Somer, Correctional Officer Zegrazewski, Deputy Warden Walker, Captain Diloretto, Captain Dorosko, Dr. Moyer, Dr. Burns, and Mental Health Director Reischler with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Amended Complaint to each Defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request on the **thirty-fifth (35) day** after mailing. If any Defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service, and the Defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

4) Correctional Officer Somer, Correctional Officer Zegrazewski, Deputy Warden Walker, Captain Diloretto, Captain Dorosko, Dr. Moyer, Dr. Burns, and Mental Health Director Reischler shall file their responses to the Amended Complaint—either an answer or a motion to dismiss—within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to

them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They may also include any and all additional defenses permitted by the Federal Rules.

5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the Court.

6) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

7) The Clerk shall immediately enter this District's Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

8) The Clerk shall send a courtesy copy of the Amended Complaint, the exhibits appended to the Complaint, and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

It is SO ORDERED.

Dated: New Haven, CT
July 1, 2021

_s/ Charles S. Haight, Jr._
CHARLES S. HAIGHT, JR.
Senior United States District Judge